Good morning. Miley Hirota for the Petitioner Anna Peng. May it please the Court. The Petitioner Anna Peng... Oh, I'm sorry, and before I start, I would like to reserve one minute. All right. What's your clock? The Petitioner Anna Peng has lived in the United States for 20 years. She is a mother of two children, and her younger son, Andrew, is autistic. She is not a hardened criminal, not an aggravated felon, and she has never spent even one day in prison. In fact, she was not sentenced to any prison term at all. It was a lethal combination of ADEPA and IRA-IRA that attached new legal consequences to her conviction. At the time, her decision of whether to enter a plea or go to trial, the crime was not a deportable offense, and ADEPA changed that. Then, prior to IRA-IRA's enactment, Peng remained free to apply for a waiver under former Section 212C and 212H, despite her conviction for a CIMT. After IRA-IRA, she lost that right. Applying basic principles of retroactivity, both ADEPA and IRA-IRA attached a new legal consequence to Peng's conviction, the certainty of deportation. Prior to that... If you had been granted your continuance, what evidence would you have introduced that her reliance on the INS District Counsel letter was reasonable? At the time that she chose whether to go to trial or not, it wasn't even a deportable offense. She had actual reliance on the INS District Counsel's letter, which was written on April 8th, and we also assume that she chose to go to trial sometime before ADEPA, which was April 24th. Well, she could have pled... She could have entered a guilty plea at any time up until the trial, even during the trial. Was there evidence that that was arbitrary, that was even at issue? That is not on the record, Your Honor. Well, but if you had been granted a continuance, would you have been able to put in some evidence about that? Excuse me, that she was offered a plea? Well, no. I mean, I think the question is, you're arguing that the repeal of 212... of the 212C waiver is impermissibly retroactive as applied to your client. Yes. And that's because she reasonably relied on the fact that it was... her single crime of moral turpitude was not a deportable offense at the time. So what evidence do you have of that reasonable reliance? I know that the government said that she was not eligible for that relief during the immigration hearing, and I don't know if you were her counsel at that point or not, but she asked for continuance to address that argument, and the immigration judge said no. That's right, Your Honor. So this is the same argument that we're raising now to this Court, which is, well, I don't think that the case law requires actual reliance, just reasonable reliance. And the law at the time was she wasn't deportable. Well, just a minute. It's my understanding that when she was indicted and entered her not guilty plea, she had the possibility that the sentence would have rendered her deportable, didn't she? No, Your Honor, that's not correct. At the time, the law was that she had to have been sentenced to a year or more. Under the sentencing guidelines, that wasn't a possibility. She wasn't going to be sentenced to a year or more. What was the sentencing guidelines upon which she relied? What were the sentencing guidelines? What was it? Yeah, what was the guideline? Because when I read it, it didn't seem to me that, based on what she had in front of her, there was any way for her to know that she wouldn't get a sentence of less than a year. She didn't know what she was going to get. She didn't know for sure, Your Honor, but there was no discussion. The sentence transcript is in the record, and there's no discussion whatsoever about the possibility of a year or more. But Judge Smith makes a good point. What were the guidelines that applied to her at the time? I actually don't know. Because she actually received a sentence of probation. I'm going to assume that the court followed the guidelines in calculating that. Yes. Well, it's my understanding that she could have got a sentence of over a year, but that at the appropriate time she did not, based on the guidelines that were in front of her for the crime she committed. So my worry is, then, that at the time she was deciding what to do, she had the possibility that the sentence could have made her deportable, but she didn't know. Do you agree? Well, let's go on one further. When did she plea? When did she plead? It's my understanding she pled on January the 11th of 1996, right? Yes, Your Honor. It's my understanding that the letter upon which you want us to suggest she was relying didn't even come out until April the 8th of 1996. That's correct. So how was she relying on that letter? Her plea predated the letter. Well, the letter is just a further evidence that she was relying on the law at the time, Your Honor. Well, I guess I'm again trying to decide how it is that we would suggest that that was the law. We know, I mean, it's obvious that pleading to a count where it would have ultimately developed into moral turpitude was not necessarily a part of 212C. However, the sentence or the plea upon which or the crime upon which she was convicted at the time, after trial, even at the time when she was making the plea, I'm still having a tough time saying how we would have known she wouldn't have been deportable. I think you have to understand how guilty pleas are entered. She entered her guilty plea of not guilty at her arraignment, right? Yes. And the question is whether she was going to change that plea to guilty or not, because as I'm sure the government attorney has experience with, I don't know if he's with the U.S. Attorney's Office or here with DOJ, but, well, routinely criminal defendants do not come in and plead guilty if they're contemplating a guilty plea. Otherwise, there's nothing to bargain over. Routinely, the first plea of a criminal defendant is not guilty, and the question is whether there's going to be bargaining to enter into a plea of guilty with certain consequences attached. Isn't that correct? So the actual date of entry of the plea of not guilty is not really relevant. Yes, and then it was scheduled for a trial in May. She wasn't actually even convicted until, what, December or something? Well, the jury entered its verdict on May 9th, 1996, and then the judgment and sentencing were sometime later in December 1996. So under Judge Smith's scenario that he's posing to you, what he's saying is why isn't it unreasonable for her to have gone all the way to conviction when, I guess, a rear was entered. It wasn't a certainty that if she was not sentenced to a year or more, then she would not be deportable. And when did her co-defendants plea? When did her, I'm sorry? Her co-defendants who got, you know, four months or whatever else they got. I don't know the date of their plea, Your Honor. I guess I felt like Judge Wardlaw's questions were very good when she said, what evidence do we have in the record that of what was ever suggested to her or what the situation was or that she even relied on any type of letter from the government attorney? Well, Your Honor, when you say in the record, the continuance was denied, so there is not much in the record. Well, she didn't say what was in the record. She said what would you have given to the record. I mean, that's what we're really asking. Because in my book, the facts were pretty straightforward. She could have been, if she could have been sentenced to longer than a year, she could have been deportable. Oh, well. Not at the time. Not at the time. If she had actually been sentenced to a year or more, then she would have been deportable. Not that if she could have been sentenced. That's what ADEPA changed. ADEPA made it so that if you could, if you had a possibility, in other words, if it's a felony, then you would be deportable. But in her case, she had to have actually been sentenced to a year or more in order for her to be deportable at the time that she pled. I see I only have 30 seconds left. I'd like to reserve that. Okay. Good morning. May it please the Court, William Minnick representing the Respondent. This case is a straightforward application of the Court's prior decisions in Armandia's Montoya and Saravia Paguda. Is it really? Didn't all our prior decisions holding that 212C waiver was not impermissibly retroactive, didn't all of those decisions involve aggravated felonies and not a single crime of moral turpitude? That is correct, Your Honor. Did you give me one case that held that 212C was not impermissibly retroactive that involved a single crime of moral turpitude? No, Your Honor. I don't have a case like that. That would be the first one, wouldn't it? Well, I can't say that either because I don't know. If we were to publish this, it would be the first one that still held. I take Your Honor's word for it. And I agree with you that Armandia's Montoya and Saravia Paguda didn't involve aggravated felons. The government would rely on the language in Saravia Paguda. On page 1132, it was rejecting Petitioner's argument that Armando's Montoya didn't apply because it was a different statutory scheme, and the court said that the fact that different statutes were imposed to bar eligibility is inconsequential to the retroactivity analysis. And I think that's the same here. It doesn't matter that she's ineligible because the statute was repealed altogether, as opposed to the statute in Armandia's Montoya that just made it ineligible for an aggravated felon. That part is not consequential for the retroactivity analysis because in either way a statute just took away the eligibility. But why wasn't it reasonable for her to rely on the sentencing guidelines at the time to be fairly certain that she would not receive more than a year? I mean, for her crime, given what her co-defendants were sentenced to, there isn't a judge who would have sentenced her to more than a jail and prison. I mean, Your Honor, we would rely on, again, the language in Saravia that says, if you proceed to trial, any claimed reliance is per se unreasonable. And, again, those aren't my words. The court said it's per se unreasonable. But none of those cases that said that involved a crime that is so, I mean, de minimis as compared to those aggravated felonies that we're talking about where you're pretty certain you're going to get jail time. I mean, Payne didn't even get jail time. That's correct, Your Honor. I mean, I have nothing beyond our reliance in Armandia's Montoya and Saravia Peguta, but, I mean, the language in those cases was clear that any claimed reliance, if you proceed to trial, is per se unreasonable. And that if you proceed to trial, you're categorically excluded. Again, that's the court's language in Saravia Peguta, not my language. Do you believe that Saravia Peguta then suggests that, in this instance, where at the time she was charged with a crime, that even a maximum sentence would not have tended her ineligible for the relief, that that would make it apply? I mean, it seems to me that that's never been presented to anyone, and now it's in front of us. And I'm having a tough time understanding why, even though she had a chance that she could have got, which was my question to her, more than a year, even though she had a chance to get that, there's no question that the statute didn't apply, even if she had got five years. I mean, I think from our position, whether or not her offense made her removable at the time she was convicted or at the time she was making the decision, from our perspective, doesn't help her. That's not the test. The test is simply whether or not she pled guilty or whether she proceeded to trial. Now, are we vested with enough power to make that determination on the first instance? To make the determination that you're asking us to make, or should we send this back to the BIA to give consideration? Well, I mean, what I'm asking you to do is just to find this case is a strict application of Armin Diaz-Montoya and Sarabia Peguda, and that you're bound by those decisions because Petitioner proceeded to trial and didn't plead guilty. Well, you can tell I'm having a really hard time buying that argument, because in this case, Payne was convicted of a single crime of moral turpitude, and the sentencing consequences to that are minimal under the applicable guidelines at the time, and also given her particular circumstances. And you're telling me that you weren't even the lawyer involved in the district court case, so we have no information about whether the government even offered her a plea agreement in that case. So I guess we have to assume that maybe a plea agreement wasn't even offered and there was no incentive for her to plead guilty. Just to make two points, I mean, regarding whether or not she was offered a plea agreement at trial, I mean, she has been given a chance to make an appellate record of that fact. No, no, no. You can't take evidence here. That's my problem with the immigration judge denying the continuance. Was it you? Were you the lawyer in the immigration proceedings? I wasn't, Your Honor. So you weren't at any of the prior proceedings. Well, the transcript says that the government did not file a written brief on this issue and that when the government raised this issue that she was ineligible, the immigration judge just accepted the argument. And Payne's counsel asked for a continuance, and the immigration judge didn't even go through the omit factors and just denied the continuance, and it was never really addressed below. I'd invite the court to consider the fact that they did take a short continuance of an hour to allow counsel to go back to her office and review the case. An hour. That's a record of 121 to 23. I mean, I don't know how much paper on and argument time before the Ninth Circuit. Well, I mean, granted an hour's not a lot of time, but I mean she was permitted an opportunity to research the issue back in her office. Just to ask you something, have the parties engaged in any mediation of this issue? We have, Your Honor. You have, and it's failed? That's correct, Your Honor. Okay. Just with the short remaining time I have left, I would invite the court's attention to United States v. Leon Paz, who pled guilty to burglary. And at the time he pled guilty, his crime was not classified as an aggravated felon. So at the time he pled guilty, his conviction did not render him deportable when he was convicted. But, again, he pled guilty. And the reason Leon Paz, the reason the repeal was retroactive with respect to Leon Paz, wasn't because his crime didn't render him deportable at the time he was convicted. It was because he pled guilty. So we'd ask the court to consider that. Unless the court has any remaining questions, the government would ask that the court deny the petition. Thank you, counsel. Thank you. I have nothing further. You can take a minute. Thank you. I want to quickly address the cases that opposing counsel raised. Saravia Paguada, in that case the court said that it is the alien's decision to enter a guilty plea or proceed to trial that is a past relevant conduct for the purposes of Landgraf, not the conviction itself. Also in Leon Paz, it is similar to Ms. Peng's case where she wasn't deportable at the time and he had two bulwarks against deportation. One was he wasn't deportable at the time, which was the same as Ms. Peng. And the second is that if his crime was reclassified and he became deportable, he would have 212C relief, which is also the same as Ms. Peng. Although he pled guilty, again, as Judge Wardlaw pointed out, that was an aggravated felony case and Ms. Peng is a CIMT. Also the court has held one case that we could see for a jury trial where they found an impermissibly retroactive effect in Hernandez D. Anderson. Finally, Ms. Peng does have an equal protection claim where it violates her right to equal protection where there's disparate treatment of Ms. Peng and those permanent residents who are entitled to 212C relief because just because she doesn't fit within this exception, the law treats her differently from those permanent residents who form settled expectations as to 212C relief because they have committed a more severe offense. Ms. Peng's offense is less severe and she's not allowed to get 212C whereas an aggravated felon is. This certainly could not have been intended by Congress. All right. Thank you, counsel. Peng v. Holder will be submitted.
judges: Alarcon, Wardlaw, Smith N. R.